UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|     NANA A. QUANSAH | ) | Case No. 10-12304-SSM |
| | ) | Chapter 7 |
|                   Debtor | ) | |
| | ) | |
| CECILIA GREY-THERIOT | ) | |
| | ) | |
|                   Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 10-1260 |
| | ) | |
| NANA A. QUANSAH | ) | |
| | ) | |
|                   Defendant | ) | |

**MEMORANDUM OPINION**

This is an action to determine the dischargeability of a $15,000 judgment obtained against the debtor under the Virginia Consumer Protection Act for failure to deliver airline tickets for which the plaintiff had paid. A trial was held on February 24, 2011. The plaintiff and the defendant were each present and were represented by counsel. At the conclusion of the evidence, the court took the issues under advisement. This opinion constitutes the court's findings of fact and conclusions of law under Rule 7052, Federal Rules of Bankruptcy Procedure, and Rule 52(a), Federal Rules of Civil Procedure.

<u>Background and Findings of Fact</u>

Nana A. Quansah ("the debtor") filed a voluntary petition in this court on March 26, 2010, for relief under chapter 7 of the Bankruptcy Code. The trustee filed a report of no

1

distribution on July 2, 2010, and the debtor received a discharge of his dischargeable debts on July 12, 2010.

Among the creditors listed on his schedules was Cecilia Grey-Theriot. Ms. Grey-Theriot had obtained a judgment against the debtor on January 31, 2008, in the General District Court for the City of Alexandria, Virginia, in the amount of $15,000, with interest at 8% from October 28, 2006, plus $2,500 in attorney's fees and $72 in court costs.

The plaintiff testified that she grew up in Ghana, West Africa, where her mother, aunts, and extended family still reside. Prior to the events giving rise to the present litigation, the last time she had seen her family in Ghana was in 2006. Following that trip, she saved for four years (so she would not incur credit card debt) in order to travel to Ghana with her three sons to see her mother, who by then was 93 years of age. After checking first with British Airways, which quoted her ticket prices of approximately $6,000, she contacted the debtor, who worked at a travel agency called Llynchrist Travel Service, Inc., on May 12, 2006. The debtor quoted her a price of $4,681, which her husband, John Grey-Theriot, paid by a check drawn on their joint checking account on June 6, 2006. Although the debtor had made reservations for the plaintiff with British Airways on May 12th, the airline had cancelled the reservation on May 24th when tickets had not actually been purchased. The debtor gave the plaintiff's husband a receipt for the amount of the check together with an itinerary print-out that he represented was an "eticket" for a departure on October 29, 2006, and return on December 3, 2006.

The plaintiff received no further communication from the debtor. However, on the day prior to the scheduled departure, she checked the British Airways web site and discovered that she had no reservation. When she telephoned British Airways, she was told the reservation had

been cancelled because the tickets had never been paid for.  Distraught, she first contacted the police in Maryland, where she lived, then telephoned all the telephone numbers the debtor had given her without any answer.  She also learned that the offices of Llynchrist Travel were closed.  Ultimately, she spent $5,600—which she charged on her credit card—to obtain tickets from a travel agency in New York.  After returning from her trip, she retained counsel, who filed suit against the debtor, Hildgarde N. Ofori, and Llynchrist Travel in the General District Court for the City of Alexandria, Virginia.  The warrant in debt asserted a $15,000 claim under the Virginia Consumer Protection Act, § 59.1-196 *et seq*., Code of Virginia, for misrepresenting an intent to purchase tickets and misrepresenting services to be performed.

        The debtor appeared on the return date, at which the court ordered the filing of a bill of particulars and grounds of defense and set a trial date.  Although the debtor filed a grounds of defense, he did not appear at the trial.  (According to the debtor, he intended to appear but arrived at court late.)  At the trial, the court accepted a proffer of evidence from the plaintiff's attorney and entered judgment in favor of the plaintiff for $15,000 (of which $5,600 represented actual damages and the remainder enhanced damages),[1] with interest at 8% until paid, and attorney's fees of $2,500.  No appeal was taken from the judgment.  Although the plaintiff attempted to work a payment arrangement with the debtor, he never made any payments on the

---

[1] Under the Virginia Consumer Protection Act, any person who suffers loss as a result of a violation may recover actual damages, or $500, whichever is greater. Va. Code Ann. § 59.1-204(A). Additionally, "[i]f the trier of fact finds that the violation was willful, it may increase damages to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater." *Id.*  The plaintiff may also be awarded reasonable attorney's fees.  Va. Code Ann. § 59.1-204(B).

judgment prior to filing bankruptcy.  The total fees charged to the plaintiff by her attorneys for obtaining and attempting to collect the judgment was $14,541.02.

The debtor testified that he was hired by Llynchrist Travel in late 2005 or early 2006 because of his background as a travel consultant.  He testified that the owner of the company was Hildegarde Ofori, and he asserted that he never had an ownership interest in the business, although he admitted that on a corporate registration form filed with the State Corporation Commission he was identified as the president of the company and Ms. Ofori as the vice–president.  He testified that during the period in question, the business had only one other employee besides himself and Ms. Ofori.  He further testified that his job title was "reservation manager" and that his duties consisted of taking phone calls and booking reservations.

According to the debtor, Ms. Grey-Theriot telephoned him on May 12, 2006, to order tickets to Ghana.  He made the reservations, quoted her the price for the tickets, and then emailed her a copy of the reservation.  He explained that by the time Mr. Grey-Theriot came in on June 6, 2006, to pay for the tickets, however, the airline had cancelled the reservations.  The debtor then booked new reservations and gave a print-out of the itinerary to the plaintiff's husband.  The debtor testified that Llynchrist Travel's policy was to pay for tickets only after a customer's check had cleared, and that the plaintiff's check was deposited into the company's checking account on June 6, 2006, the same day he received it, in order to clear.  Sometime shortly thereafter, he was told by Ms. Ofori that the company's bank account had been garnished to enforce a judgment that had been obtained by company called Mill-Run Tours, Inc.  The date the garnishment was served on the bank is not shown by the evidence, but the garnishment summons appears to have been issued on or about June 8, 2006, with a return date of July 26, 2006.  The

4

debtor testified that as a result of the garnishment, Ms. Ofori told him Llynchrist Travel could no longer pay its bills, and the company simply shut down.

## Conclusions of Law and Discussion

### I.

This court has subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. A determination of dischargeability is a core proceeding in which a final judgment or order may be entered by a bankruptcy judge. 28 U.S.C. § 157(b)(2)(I). Venue is proper in this district under 28 U.S.C. § 1409(a). The defendant has been properly served and has appeared generally.

### II.

Although a discharge of an individual debtor in bankruptcy extends to most prepetition debts, certain debts are excluded from discharge. Among these are debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." § 523(a)(2)(A), Bankruptcy Code. The required elements of actual fraud under § 523(a)(2) are: "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 218 (4th Cir. 2007). The burden of proof is on the plaintiff, and the standard of proof is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed.2d 755 (1991).

Were the court deciding this case based solely on the testimony and exhibits presented at trial, the court would have some difficulty finding that the debtor deliberately misrepresented his intent to purchase tickets for Ms. Grey-Theriot and her children. Rather, it would appear that the unexpected garnishment of the company's bank account was an intervening event that prevented the tickets from being purchased. This is not to say that the record is as clear as it might be. The debtor's grounds of defense filed in the state court action does not mention the garnishment, and it is astonishing, to say the least, that the debtor would not have immediately communicated with the plaintiff to tell her what had happened if matters outside his control had prevented the tickets from being purchased.

The evidence, however, does not exist in a vacuum. A trial has already been held in state court, and the state court, by its judgment, necessarily determined that the debtor was guilty of misrepresentation in connection with the transaction. Although *res judicata*, or claim preclusion, does not apply in the dischargeability context, *Brown v. Felsen*, 442 U.S. 127, 99 S. Ct. 2205, 60 L. Ed.2d 767 (1979), collateral estoppel, or issue preclusion does. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed.2d 755 (1991); *Hagan v. McNallen (In re McNallen)*, 62 F.3d 619, 624 (4th Cir. 1995). The prohibited practices under the Virginia Consumer Protection Act are set forth in §§ 59.1-200 and 59.1-200.1, Code of Virginia. These include, in addition to various specifically identified types of misrepresentations, "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14). The elements of a misrepresentation claim under the Virginia Consumer Protection Act appear to be fully congruent with the elements required for non-dischargeability under § 523(a)(2)(A). To the extent the Virginia act may be violated by conduct

6

short of a willful intent to deceive, that element is supplied in this case by the award of enhanced damages, which allows such damages only if the trier of fact determines that the violation was "willful." Va. Code Ann. § 59.1-204(A). The only other circumstance in which a violation of the statute would not satisfy all the elements of § 523(a)(2)(A) would be if the misrepresentation related to the financial condition of the debtor or an insider of the debtor. *See Blackwell v. Dabney*, 702 F.2d 490, 492 (4th Cir. 1983) (false oral statements that the business "was growing" and was a "top-notch company" that was "just blooming" were statements respecting the financial condition of the company and therefore fell outside the scope of § 523(a)(2)(A)); *Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060, 1061 (4th Cir. 1984) (false oral statement that collateral being offered as security was unencumbered was a statement concerning financial condition and was therefore not a basis for holding the debt nondischargeable because it was not in writing as required by Sec. 523(a)(2)(B)). But the misrepresentations alleged in the state court action did not relate to Llynchrist's financial condition. For that reason, the court determines that the state court judgment conclusively establishes all the elements of nondischargeability under § 523(a)(2)(A).

One final issue concerns the attorney's fees incurred by Ms. Grey-Theriot over and above those awarded by the state court. Since the issue of attorney's fees has already been adjudicated by the state court, this court lacks jurisdiction to award additional fees. *Heckert v. Dotson (In re Heckert)*, 272 F.3d 253, 257 (4th Cir. 2001) (holding that bankruptcy court did not have jurisdiction to enter money judgment in connection with determination of dischargeability where claim had already been reduced to judgment in state court).

A separate judgment will be entered consistent with this opinion.

Date: _____    _____
                                          Stephen S. Mitchell
Alexandria, Virginia                      United States Bankruptcy Judge

Copies to:

Frank Edward Hudson, III, Esquire
Cunningham & Associates, PLC
1600 Wilson Boulevard, Suite 1008
Arlington, VA 22209
Counsel for the plaintiff

Nathan A. Fisher, Esquire
3977 Chain Bridge Road, #2
Fairfax, VA 22030
Counsel for the defendant

Nana A. Quansah
20 Belladonna Lane
Stafford, VA 22554
Debtor